Filed 01/02/26

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-00323

---

**Bruce Kelley, et al v. Franklin County Rehab Center, LLC d/b/a Franklin County Rehabilitation Center and d/b/a Franklin County Rehabilitation & Adult Care Center, et al**

---

## ENTRY REGARDING MOTION

Title:           Motion to Reconsider; Motion Ruling on Motion for Summary Judgment; to Exclude Causation Opinion Testimony of Bruce Tranmer, MD (Motion: 18; 21)
Filer:           Kaveh S. Shahi; Kaveh S. Shahi
Filed Date:      September 02, 2025; September 24, 2025

The motions are DENIED.

Defendants Franklin County Rehabilitative Center and Kyla Apley seek reconsideration of the Court's August 18, 2025 denial of their motion for summary judgement on the issue of "but for" causation. Defendants also seek to exclude the causation opinion testimony of Dr. Bruce Tranmer on which the Court premised its denial of summary judgment. As these two issues are intertwined, the Court will address both motions jointly.

A motion to reconsider "is addressed to the sound discretion of the trial court . . ." *Chelsea Ltf. P'ship v. Town of Chelsea*, 142 Vt. 538, 540 (1983); see also *Gregory v. Poulin Auto Sales, Inc.*, 2012 VT 28, ¶ 17 (mem.) (noting that a motion under either Rules 59 or 60 is addressed to the trial court's discretion); see also *Kneebinding, Inc.*, 2018 VT 101, at ¶ 34 (reviewing a motion to reconsider under an abuse of discretion standard). A motion to exclude expert testimony is similarly vested in the discretion of the trial court. *985 Associates, Ltd. v. Daewoo Electronics America, Inc.*, 2008 VT 14, ¶ 9.

As noted in both the Court's August 18th Decision and its recent January 31st decision addressing Plaintiffs Bruce and Nancy Kelley's Motion to Reconsider, the present motion practice has centered around the issue of "but for" causation that Plaintiffs are obligated to establish against Defendants in this case through expert witness testimony. *Taylor v. Fletcher Allen Health Care*, 2012 VT 86, ¶¶ 9, 10. Briefly, those decisions detail the fact of the present matter. Mr. Kelley was hospitalized at UVMMC for several months from late 2017 to early

2018 to address severe vascular issues in his back and legs. In late February 2018, doctors at the University of Vermont Medical Center (UVMMC) performed a complicated vascular procedure designed to assist Mr. Kelley's circulation and relieve the issues that had been plaguing him for the previous months. On March 2, 2018, several days after the surgery, Mr. Kelley was released from UVMMC and driven by ambulance to the Franklin County Rehabilitative Center (FCRC) where he was admitted in the afternoon.

Shortly after his arrival, Mr. Kelley needed to use the bathroom and Nurse Kyla Apley seated him in a hoyer chair, which is designed to move individuals with limited mobility in and out of chairs, beds, and toilet facilities. By all reports, this action did not go well. Mr. Kelley complained of pain during the lift, and it did not get him to the facility in time. After Mr. Kelley was cleaned up and put into the bed, he claimed to experience pain and then numbness in his legs. Later staff at FCRC gave Mr. Kelley pain medication for these complaints. In the early hours of March 3, 2018, FCRC sent Mr. Kelley to Northwestern Medical Center for a separate issue. At Northwestern, staff determined that there were issues with Mr. Kelley's mobility and leg function and sent him to UVMMC. There Mr. Kelley was analyzed and after multiple tests, the medical team determined that he was suffering from a subdural hematoma near his spine. Late in the evening of March 3, 2018, Dr. Tranmer, a neurologist operated on the hematoma, but the damage to the spine was irrevocable, and Mr. Kelley was permanently paralyzed from the waist down.

Through the testimony of their experts, primarily Kristin Husher, Plaintiffs have established evidence showing the duty of care that Nurse Apley and FCRC owed to Mr. Kelley at the time of his admission and the use of the hoyer chair. Ms. Husher's opinion also encompasses what elements Defendants breached in the operation of the hoyer chair and its immediate aftermath.

Beyond these issues there is the question of "but for" causation. Here the evidence narrows but exists. As the Court noted in its December 30th decision, the chain of causation in this case—given Mr. Kelley's underlying medical condition, the surgery, anticoagulation medication in his system, bumpy transportation from UVMMC to FCRC, and the hoyer chair incident, among other factors—is complicated. As the Court found in its August 18th ruling, Dr. Tranmer offered an expert opinion that created, at least for the purpose of a motion for summary

judgment, a disputed issue related to causation.  In its response to the motion to reconsider Plaintiffs have also pointed to portions of Dr. Jacob Rachlin's deposition that indicate Dr. Rachlin's opinion that trauma from the hoyer lift chair is likely associated with the bleeding episode that resulted in the subdural hematoma and caused a rupture in a compromised vein or blood vessel.  (Rachlin Depo. at 44, 47, 173, and 187–89.)  While Dr. Rachlin and Dr. Tranmer link the hoyer chair incident to the hematoma primarily because of its temporal relationship, both experts are fully qualified to offer expert opinions on this issue and to the extent that their conclusions arise from temporal proximity rather than a more complicated or medical analysis goes to both credibility and strength of the expert opinion but not its admissibility or weight for purpose of a motion for summary judgment.  *Massucco v. Kolodziej*, 2024 VT 76, ¶ 11.

## Motions to Reconsider and to Exclude

Taking both Tranmer's and Rachlin's opinions in a light most favorable to Plaintiffs, there exists an issue of material fact concerning the cause and contributing factors of Mr. Kelley's hematoma.  Id.  Nothing in Defendants' motion to reconsider or their motion to exclude suggests that this evidence is not sufficient to create an issue of material fact for purposes of the prior motion for summary judgment.  Defendants' motion, instead focuses on issues such as inconsistency, weakness in the experts' analysis, and contradicting expert opinions.[1]

Defendants raise two new issues regarding Dr. Tranmer's testimony in their motion for reconsideration and motion to exclude.  Defendants argue that Dr. Tranmer cannot provide Plaintiffs with an expert opinion because he was not disclosed as an expert witness under Rule 26 and was not retained or disclosed as an expert on the issue of what caused Mr. Kelley's hematoma.  Defendants also contend that Dr. Tranmer is not qualified under Rule 702 to provide an expert opinion.

The question of whether Dr. Tranmer can testify on the issue of causation in this case is within the trial court's discretion.  *Hutchins v. Fletcher Allen Health Care, Inc.*, 172 Vt. 580, 581 (2001) (mem.).  While Dr. Tranmer was not disclosed as an expert, he is a witness to Mr.

---

[1] Plaintiffs' presentation, as noted in the Court's prior decision, has been inconsistent around these issues and has complicated the record.  A good example of this is found at page 252 of Dr. Rachlin's deposition where he agrees that he did not write his expert disclosures and is confronted with the fact that his deposition testimony was significantly inconsistent with the disclosures.

Kelley's condition, the hematoma, and the underlying facts. His causative opinion, as a neurologist is likely to assist the triers of fact. Dr. Tranmer was subject to depositions and disclosures. In fact, much of Defendants' motion illustrates the wealth of cross examination and impeachment material that they can call upon if and when Dr. Tranmer testifies in the case. There does not appear to be any prejudice in terms of preparation in this respect. While unconventional, the Court does not find the balance of equities offended by allowing Dr. Tranmer to testify about Mr. Kelley's situation. For these reasons, the Court will permit Dr. Tranmer to testify and will continue to consider his deposition testimony in regard to the summary judgment issue.

The question of whether Dr. Tranmer's testimony is admissible under V.R.E. 702 must be resolved in favor of allowing his testimony. Again, the trial court has wide discretion in determining the qualifications of an expert witness. *USGen New England, Inc. v. Town of Rockingham*, 2004 VT 90, ¶ 38. In this case, Dr. Tranmer's education, certification, and qualification as a neurologist have been established, and he has as much claim as any of the other neurologist-experts to provide an opinion regarding Mr. Kelley's neurological injuries. Dr. Tranmer also has personal knowledge as Mr. Kelley's treating neurologist of the events and facts leading up to his paralysis. From these two premises, Dr. Tranmer is more than adequately qualified to offer an expert opinion in this case. While he may be biased because of his role and may have reasons to cast aspersions on FCRC to remove his own employer's culpability, these issues go to weight and credibility and not qualification. Therefore, the Court finds that Dr. Tranmer is permitted under Rule 702 to offer his expert opinion on causation.

The limitation, however, is that Dr. Tranmer may not offer additional testimony beyond his deposition and disclosed portions of his opinion as the discovery window has closed. If Dr. Tranmer has additional reasons or bases for his opinion, they are untimely and are excluded from trial.

Apart from this limitation, however, there is no basis to strike Dr. Tranmer's testimony and opinion as given at his July 19, 2024 deposition or prevent him from testifying about the causative sources of Mr. Kelley's subdural hematoma.

**ORDER**

For the foregoing reasons, Defendants FCRC and Apley's motion to reconsider and motion to exclude Dr. Tranmer's testimony are **Denied.**

Electronically signed on 12/31/2025 6:51 PM pursuant to V.R.E.F. 9(d)

_____

Daniel Richardson
Superior Court Judge


c